**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SEAN M. SPOHN,**

                                    **Plaintiff,**

vs.                                            **6:13-cv-288**
                                                        **(MAD)**

**CAROLYN W. COLVIN,**

                                    **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**THE ANTONOWICZ GROUP**             **PETER W. ANTONOWICZ, ESQ.**
148 West Dominick Street
Rome, New York 13440
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **ELIZABETH D. ROTHSTEIN, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff Sean M. Spohn brings the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Presently before the Court are Plaintiff's motion for judgment on the pleadings, Dkt. No. 14, and Defendant's opposition and cross-motion for judgment on the pleadings, Dkt. No. 15.

### II. BACKGROUND

On June 16, 2010, Plaintiff protectively filed an application for DIB and SSI, alleging a disability onset date of February 10, 2003. Dkt. No. 8, Administrative Transcript ("T."), at 20, 169-178. On October 27, 2010, Plaintiff's applications were denied, T. 106-07, and on July 13, 2011, Plaintiff and his counsel appeared at a requested hearing before Administrative Law Judge ("ALJ") Gordon Mahley, T. 49-105. ALJ Mahley issued a decision denying Plaintiff's claims for benefits on October 13, 2011. T. 20-28. Thereafter, Plaintiff requested review by the Appeals Council, T. 15-16, which review was denied on February 20, 2013, T. 1-4, thereby making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff was 45 years old at the time of the ALJ's decision, with a high school education and past work experience as a forklift operator, pre-loader, and a production/warehouse supervisor. T. 27. Plaintiff alleges disability as a result of certain back ailments, including broad right paracentral L4-5 protrusion type disc herniation producing compression on the right anterolateral aspect of the thecal sac; central and left paracentral L5-S1 disc herniation producing mild compression on the left anterolateral aspect of the thecal sac; chronic lumbago, degenerative disc disease of the lumbar spine with lumbosacral radiculopathy; and status post discectomy, laminectomy, and foraminotomy. Dkt. No. 14 at 5-6. The record evidence in this case is undisputed and the Court adopts the parties' factual recitations. *See* Dkt. No. 14 at 5-16; Dkt. No. 15 at 4 ("The Commissioner incorporates the summary of the facts set forth by Plaintiff . . . , with the exception of any inferences, arguments, or conclusions asserted therein. The Commissioner also incorporates by reference the evidence set forth in the ALJ's decision . . . .").

### III.  DISCUSSION

**A.    Legal Standards**

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

3

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     The ALJ's Decision**

ALJ Mahley found at step one that Plaintiff had not engaged in substantial gainful activity since February 10, 2003.  T. 22.  At step two, the ALJ concluded that Plaintiff suffered from chronic lumbago, degenerative disc disease of the lumbar spine with lumbosacral radiculopathy, and status post discectomy, laminectomy, and foraminotomy, which qualified as a severe impairments within the meaning of the Social Security Regulations (the "Regulations").  T. 22-23.  At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations.  T. 23.  The ALJ then found that Plaintiff had the residual functional capacity ("RFC") "to lift no more than 20 pounds with frequent lifting/carrying of objects weighing up to 10 pounds, stand for 6 hours out of an 8 hour workday, walk for 6 hours out of an 8 hour workday, sit for 6 hours out of an 8 hour workday, and occasionally climb, balance, stoop, kneel, crouch, and crawl." *Id.*  At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work, because "it exceeds his residual functional capacity."  T. 27.  At step five, relying on the Medical-Vocational Guidelines set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that Plaintiff had the RFC to perform jobs existing in significant numbers in the national economy.  *Id.*

Therefore, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Act. T. 28.

**C.     Analysis**

In seeking federal judicial review of the Commissioner's decision, Plaintiff argues that: (1) the ALJ erred when he failed to properly evaluate medical opinion evidence and failed to give controlling weight to Plaintiff's treating physician; (2) the ALJ erred in his application of the Medical-Vocational Guidelines by failing to account for Plaintiff's non-exertional limitations and develop the record with vocational expert testimony; and (3) the ALJ improperly assessed Plaintiff's credibility. As explained in further detail below, the Court finds that while none of the errors claimed by Plaintiff would, standing alone, warrant remand, the cumulative effect of those errors compels the conclusion that the ALJ's determination was not supported by substantial evidence and that remand for further proceedings is appropriate.

**1.     Treating Physician Rule**

Plaintiff argues that the Commissioner "should have accorded controlling weight to the opinions of treating physician, Martin Schaeffer, MD." Dkt. No. 14 at 19. Plaintiff contends that Dr. Schaeffer's opinions were supported by the record, were not inconsistent with other medical evidence, and were based upon Dr. Schaeffer's expertise and longitudinal treatment history with Plaintiff. Plaintiff also argues that the Commissioner failed to give proper weight to other opinion evidence in the record; specifically, Plaintiff contends that while the Commissioner gave "great weight" to the opinions of consulting examiners Dr. Mohler, Dr. Rivera, and Dr. Yu, he ignored certain parts of Dr. Mohler's opinions that were consistent with Dr. Schaeffer's. Dkt. No. 14 at 22. In addition, Plaintiff claims that Dr. Mohler's opinion that Plaintiff could perform "light work duty work with part time work in a sedentary position," T. 25, was "unclear at best," Dkt. No. 14

5

at 23.  Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).  An ALJ may refuse to consider the treating physician's opinion only if he is able to set forth good reason for doing so.  *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011).  The less consistent an opinion is with the record as a whole, the less weight it is to be given.  *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record").

The opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts.  *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).  "While the final responsibility for deciding issues relating to disability is reserved to the Commissioner, the ALJ must still give controlling weight to a treating physician's opinion on the nature and severity of a plaintiff's impairment when the opinion is not inconsistent with substantial evidence."  *See Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:  (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors

6

brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c); *Shaw*, 221 F.3d at 134.

Although the ALJ need not explicitly consider each of the factors listed in 20 C.F.R. § 404.1527(c), it must be clear from the ALJ's decision that a proper analysis was undertaken. *See Petrie v. Astrue*, 412 Fed. Appx. 401, 406 (2d Cir. 2011) ("[W]here 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'"); *Hudson v. Colvin*, 5:12-CV-0044, 2013 WL 1500199, *10 n.25 (N.D.N.Y. Mar. 21, 2013) ("While [the ALJ] could have discussed the factors listed in the regulations in more detail, this does not amount to reversible error because the rationale for his decision is clear and his ultimate determination is supported by substantial evidence."), *report and recommendation adopted*, 2013 WL 1499956 (N.D.N.Y. Apr 10, 2013). Failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Sanders v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 74, 77 (2d Cir. 2012).

Before determining whether the Commissioner's decision is supported by substantial evidence, the court "must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations and alterations omitted); *see also Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). The ALJ has a threshold duty to adequately develop the record before deciding the appropriate weight to give the treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("[A]n

7

ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."); *Hinds v. Barnhart*, No. 03-CV-6509, 2005 WL 1342766, \*10 (E.D.N.Y. Apr. 18, 2005) ("The requirement that an ALJ clarify a treating source's opinion that a claimant is unable to work is part of the ALJ's affirmative obligation to develop a claimant's medical history."); *Pabon v. Barnhart*, 273 F. Supp. 2d 506, 514 (S.D.N.Y. 2003) ("[T]he duty to develop a full record . . . compels the ALJ . . . to obtain from the treating source expert opinions as to the nature and severity of the claimed disability . . . . Until he satisfies this threshold requirement, the ALJ cannot even begin to discharge his duties . . . under the treating physician rule." (alterations in original)).  "Because of the considerable weight ordinarily accorded to the opinions of treating physicians, an ALJ's duty to develop the record on this issue is 'all the more important.'" *Rocchio v. Astrue*, No. 08-CV-3796, 2010 WL 5563842, \*11 (S.D.N.Y. Nov. 19, 2010) (citation omitted), *report and recommendation adopted*, 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011).  An ALJ's "failure to develop the record adequately is an independent ground for vacating the ALJ's decision and remanding the case."  *Green v. Astrue*, No. 08-CV-8435, 2012 WL 1414294, \*14 (S.D.N.Y. Apr. 24, 2012) (citing *Moran*, 569 F.3d at 114-15), *report and recommendation adopted*, 2012 WL 3069570 (S.D.N.Y. July 26, 2012).

Here, the ALJ gave less than controlling weight to the opinion of Plaintiff's treating physician Dr. Schaeffer.  The ALJ stated the following reasons for doing so: (1) Dr. Schaeffer's opinion was based on Plaintiff's subjective complaints; and (2) Dr. Schaeffer's opinions were inconsistent with other substantial evidence in the record.  T. 26.

As an initial matter, the Court notes that the ALJ did not explicitly address each of the factors set forth in 20 C.F.R. 404.1527(c).  The ALJ merely noted in passing that Plaintiff was referred to Dr. Schaeffer in 2009, but did not analyze the frequency of examination.  *Cf.* C.F.R. §

8

404.1527(c)(2)(i) ("the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"). Nor did the ALJ analyze the nature and extent of the treatment relationship between Plaintiff and Dr. Schaeffer. *Cf.* C.F.R. § 404.1527(c)(2)(ii). With respect to whether Dr. Schaeffer's opinion was supported by relevant evidence, *see* C.F.R. § 404.1527(c)(3), the ALJ did note that Dr. Schaeffer's opinion appeared to be based on Plaintiff's subjective complaints, T. 25. As to the consistency of Dr. Schaeffer's opinions with the record as a whole, *see* C.F.R. § 404.1527(c)(4), the ALJ concluded that they were not, but offered little explanation for this conclusion, T.25. Moreover, as argued by Plaintiff here, certain aspects of Dr. Mohler's opinions, which the ALJ afforded "great weight," appear to be consistent with Dr. Schaeffer's opinions, but the ALJ provided no analysis upon which the Court may undertake a meaningful review. In addition, the ambiguity of Dr. Mohler's opinions, as discussed below, further impedes the ability of the Court to assess the consistency of Dr. Schaeffer's and Dr. Mohler's opinions. Finally, the ALJ noted that Dr. Schaeffer is a physiatrist, but did not discuss whether and to what extent this speciality affected the weight given to his opinions. *Cf.* 20 C.F.R. § 404.1527(c)(5) (the Regulations provide that the Commissioner will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist").

The Court also notes that the ALJ did not fulfill his duty to develop the record. First, consulting examiner Dr. Mohler opined that Plaintiff "is capable of performing light duty with part time work in a sedentary position functioning as a gopher, messenger, supervisor, instructor, dispatcher or parking lot attendant." T. 260. This statement appears to be internally inconsistent, insofar as "light" and "sedentary" work are separate exertional categories. Dr. Mohler also opined that Plaintiff's "prognosis is guarded from improving beyond his present condition," while also

9

noting that "[h]is current causally related degree of disability is marked, partial and temporary." T. 259. Based upon the current record, the Court cannot conclude whether these statements are internally inconsistent or supported by the record as a whole, and the record contains no indication whether the ALJ attempted to seek further clarification from Dr. Mohler regarding his opinions.

Second, the ALJs remarked in his decision that Dr. Schaeffer's treatment notes refer to disability forms that were not part of the record. The ALJ "gave the claimant's representative the opportunity to submit the medical source statements referenced in [Dr. Schaeffer's treatment notes]. However, no additional records have been received." T. 26. As discussed above, "[t]o the extent that [the] record is unclear, the Commissioner has an affirmative duty to 'fill any clear gaps in the administrative record' before rejecting a treating physician's diagnosis." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (quoting *Burgess*, 537 F.3d at 129); *see Schaal*, 134 F.3d at 505 (discussing ALJ's duty to seek additional information from a treating physician if clinical findings are inadequate). "As a result, the 'treating physician rule' is inextricably linked to a broader duty to develop the record." *Fratello v. Colvin*, No. 13-cv-4339, 2014 WL 4207590, *8 (S.D.N.Y. Aug. 20 2014). Here, it is not clear whether an explanation of Dr. Mohler's opinions or the additional medical source statements from Dr. Schaeffer would have further supported the ALJ's conclusions or Plaintiff's claim that he is disabled. This is the precisely why ALJ has a duty to develop the record – so that a claimant has a full and fair opportunity to have his claim decided, and so that a reviewing court has a complete and comprehensive record upon which to evaluate the Commissioner's determination.

In this case, although the ALJ was within his discretion when he gave less than controlling weight to Plaintiff's treating physician's opinion, the ALJ's failure to develop the record and

10

explain this finding amounted to legal error. Upon remand, the ALJ should analyze the 20 C.F.R. 404.1527(c) factors and attempt to contact Drs. Schaeffer and Mohler for additional records.

### 2. Application of the Medical-Vocational Guidelines

Plaintiff argues that "the circumstances of this case require testimony of a Vocational Expert." Dkt. No. 14 at 27. Specifically, Plaintiff contends that the non-exertional limitations imposed by the chronic pain he suffers as a result of his back problems preclude reliance on the Medical-Vocational Guidelines ("Grids").

At the fifth step of the sequential evaluation, the ALJ must determine whether the claimant can make "an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make such an adjustment, he is "not disabled"; if he cannot, he is "disabled." *Id.* In determining whether an adjustment can be made, the ALJ must consider the claimant's exertional and nonexertional limitations (as defined by his RFC), as well as his age, education, and work history. *Id.* § 404.1520(g).

If an ALJ determines that a claimant cannot perform past relevant work, he turns to the Grids to determine whether the claimant can perform other jobs that exist in the national economy based on the claimant's RFC, age, education and experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. In an "ordinary case," in which the claimant has only an exertional limitation,[1] the ALJ may meet this burden by applying the Grids. *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986); *see also* SSR 83-11, Titles II and XVI: Capability To Do Other Work – The Exertionally Based Medical-Vocational Rules Met, 1983 WL 31252, *1 (Soc. Sec. Admin. 1983) (use of Grids to direct conclusion of "disabled" or "not disabled" allowed only when criteria of a rule in the Grids

---

[1] "Exertional limitations" are "limitations and restrictions imposed by [a claimant's] impairment(s) and related symptoms" that affect her "ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

11

are "exactly met"). When a claimant has both exertional and nonexertional limitations[2], the ALJ, in certain situations, cannot satisfy this burden through use of the Grids alone. *Bapp*, 802 F.2d at 605-07. If the claimant's nonexertional limitation "significantly diminish[es]" his work capacity "beyond that caused by his exertional impairment," the ALJ instead must rely on additional vocational resources, such as expert testimony. *Id.* at 605-06 (noting that the diminishment must be more than negligible). However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert or preclude reliance" on the grids. *Id.* at 603. "Significantly diminish" means the "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id.* at 606 (footnote omitted).

Where the use of a vocational expert is appropriate, "an ALJ's hypothetical should explicitly incorporate any limitations in concentration, persistence, and pace." *McIntyre v. Colvin*, --- F.3d --- , 2014 WL 3030378, *9 (2d Cir. 2014). "[H]owever, . . . an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) 'medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace,' and the challenged hypothetical is limited 'to include only unskilled work'; or (2) the hypothetical 'otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]'" *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).

---

[2] "Nonexertional limitations" include, *inter alia*, most mental impairments, such as depression, anxiety, inability to concentrate, and difficulty seeing or hearing. 20 C.F.R. § 404.1569a(c)(1); SSR 85-15, Titles II and XVI: Capability To Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, *2 (Soc. Sec. Admin. 1985).

Here, the ALJ found:

> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the additional limitations have little or no effect on the occupational base on unskilled light work (SSRs 83-14 and 85-15). A finding of "not disabled" is therefore appropriate under the framework of this rule.

T. 27.

Although an ALJ has discretion to conclude that the Grid adequately addresses a plaintiff's non-exertional impairments, courts in this Circuit have held that the ALJ is obligated to explain such a finding. *See, e.g.*, *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996) (ALJ erred by failing to "specifically articulate the non-exertional impairments that [the plaintiff] suffered" so that the court could "fathom the ALJ's rationale in relation to the evidence in the record"); *Bapp v. Bowen*, 802 F.2d at 606 (holding that an ALJ must consider an "intermediate question" of whether the range of work the claimant can perform is "so significantly diminished as to require the introduction of vocational testimony"); *Cruz v. Colvin*, No. 12-CV-7346, 2013 WL 3333040, *19 (S.D.N.Y. July 2, 2013) ("If [the ALJ] treated the Grid as dispositive because he found that [the plaintiff's] non-exertional limitations did not significantly reduce, or only had a negligible impact on, [the plaintiff's] work capacity, [the ALJ] was obligated to explain that finding."); *Henriquez v. Chater*, No. 94-CV-7699, 1996 WL 103828, *4 (S.D.N.Y. March 11, 1996) (remand required, in part, because the record "does not . . . indicate whether the ALJ considered the relevance of expert vocational testimony and concluded that none was needed, or whether he simply skipped this step."). In this case, although the ALJ was within his discretion when he concluded that the Grid adequately addressed the Plaintiff's impairments, the ALJ's failure to explain this finding

13

amounted to legal error. Upon remand, the ALJ should seek the opinion of a vocational expert, or alternatively, explain why the Grid can be treated as dispositive under these circumstances.

### 3. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to give Plaintiff's subjective complaints of pain proper weight pursuant to the criteria set forth in the pertinent Regulations. Plaintiff contends that his allegations of pain and fatigue have been consistent throughout the record, were consistent with his diagnoses, and were found credible by his treating physicians. Dkt. No. 14 at 29-31.

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2)

14

location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, \*2 (Soc. Sec. Admin. Jul. 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at \*5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891,\*10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

15

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

In this case, the ALJ discussed the evidence of record and determined:

> Despite his back pain, the claimant testified that he has applied for more than 100 jobs since November 2010, including jobs at Pizza Hut and sporting goods stores.  He also states that he is registered with a number of employment agencies.  In July 2010, the claimant reported he was able to shop 2-3 days per week for 1 hour at a time and occasionally vacuum and do laundry (Exhibit 3E).  He does not have a driver's license due to a DWI and walks places including stores and a doctor's appointment in July 2011 (Exhibit 21F; Hearing Testimony).  At his June 2011 appointment with his treating nurse practitioner, the claimant reported that he got along well with others and spent time with friends (Exhibit 21F, page 4).
>
> The claimant underwent a consultative exam in August 2010 and was noted to be in mild distress with a mildly ataxic gait, a reduced range of motion of his lumbar spine, decreased sensation in his left leg and some decreased strength in his legs (Exhibit 8F).  At that time, the claimant reported being able to shower, bathe, and dress as well as clean, do laundry and shop with pain (Exhibit 8F).
>
> The claimant's earnings record bolsters his credibility (Exhibit 3D).
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be excepted to cause the alleged symptoms; however, the claimant's statements and the statements of Ms. Spohn, concerning the intensity, persistence and limiting effects of the symptoms are not fully credible to the extent they are inconsistent with the evidence of record.

T. 24-24.

16

Since the Court is remanding this matter for further proceedings in accordance with this Memorandum-Decision and Order, the Court need not resolve Plaintiff's argument regarding the ALJ's credibility determination. Upon remand, the ALJ is encouraged to develop a more robust record, adequately explain the application of the treating physician rule, and either use a vocational expert or explain why one is not required. In addition, the ALJ should undertake a plenary credibility determination based upon the full record on remand.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[3] for further proceedings; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

---

[3] Sentence four of § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

17

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 5, 2014
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge